TYLER, Respondent, v. TYLER et al., Appellants.

(No. 3,436.)

(Submitted November 13, 1914.　Decided December 8, 1914.)

[144 Pac. 1090.]

*Husband and Wife—Dower—Right of Widow—Real Estate—Option Contracts—Escrow—Title—Doctrine of Relation.*

Real Estate—Option—Escrow—Title in Whom.

1.　Title to land which is the subject of an option contract and a deed to which is executed and deposited in escrow, accompanied by a part payment to be credited upon the purchase price, remains in the owner until delivery of the deed by the depositary to the buyer.

[As to deeds delivered in escrow see note in 53 Am. St. Rep. 555.]

Dower—Relinquishment—"Conveyance"—Definition.

2.　A "conveyance" of land, within the meaning of section 3708, Revised Codes, by joining in which a widow will be held to have relinquished her right of dower in the realty, is one effective to transfer title at the time it is made.

Same—Right of Widow.

3.　*Held*, under the above rules, that where a wife joined her husband in an option contract on land owned by the latter, executing and depositing a deed in escrow, and the husband died before the holders of the option exercised their right and received the deed from the depositary, the widow was entitled to one-half of the net proceeds of such sale, in lieu of dower, her right to claim one-half of the real estate of her husband, granted by section 3716, Revised Codes, having attached before the deed became effective to devest deceased of title.

Real Estate—Options—Title—Doctrine of Relation.

4.　In view of the statutory rule that until delivery of a deed placed in escrow, title remains in the grantor (Rev. Codes, sec. 4599), delivery of the deed referred to in paragraph 3, *supra*, may not be held, under the doctrine of relation, to relate back either to the date of the instrument or its delivery to the depositary.

[As to doctrine of relation and when it is applicable, see note in 15 Am. Dec. 246.]

*Appeal from District Court, Missoula County; John E. Patterson, Judge.*

Action by Jane Tyler against George M. Tyler and another. From a decree for plaintiff, defendants appeal.　Affirmed.

Cause submitted on briefs of counsel.

*Mr. Theodore Lentz,* for Appellants.

Where a deed is delivered as an escrow and afterward, and before the second delivery, the grantor becomes incapable of

making a deed, the deed shall be considered as taking effect from the first delivery, in order to accomplish the intent of the grantor, which would otherwise be defeated by intervening incapacity. (*Emmons* v. *Harding,* 162 Ind. 154, 1 Ann. Cas. 864, 70 N. E. 142; *Davis* v. *Clark,* 58 Kan. 100, 48 Pac. 563; *Smiley* v. *Smiley,* 114 Ind. 258, 16 N. E. 585; *Goodpaster* v. *Leathers,* 123 Ind. 121, 23 N. E. 1090; *Lindley* v. *Groff,* 37 Minn. 338, 34 N. W. 26; *Wheelright* v. *Wheelright,* 2 Mass. 447, 3 Am. Dec. 66; *Bostwick* v. *McEvoy,* 62 Cal. 496; *Gammon* v. *Bunnell,* 22 Utah, 421, 64 Pac. 958 (1900); 4 Kent's Commentaries, 454.) The rule seems to be without exception that in the case of the death of the grantor after the first delivery and before the second delivery, the title passes at the first delivery, *i. e.,* relates back to that time and is effectual from the first delivery.

Appellant's contention is also sustained under the principle of equitable conversion. Discussing that subject, it is said: "Where real estate is contracted to be sold, equity considers it as converted into personalty, even though the election to purchase rests merely with the purchaser." (9 Cyc. 828; *McKay* v. *Carrington,* 1 McLean, 50, 16 Fed. Cas. 167, Fed. Cas. No. 8841; *Kerr* v. *Day,* 14 Pa. 112, 53 Am. Dec. 526; *Lawes* v. *Bennett,* 1 Cox Ch. 167, 29 Eng. Reprint, 1111.)

*Mr. V. S. Kutchin,* for Respondent.

Our contention is that respondent comes squarely within the provision of section 3716, Revised Codes. In order to defeat this right appellant must establish that the giving of the option outlined above, with the execution of the warranty deed under date of October 28, 1909, and the placing of said deed as an escrow with the bank, to be delivered to Hugh Forbis and E. L. P. Ector, upon their complying with the terms of said option, worked such a change or divestiture of the title in Charles J. Tyler, that upon his death the title to said land was not vested in him; that he was not seised of said lands, and the title thereof did not pass to the respondent and his other heirs; but that said lands are to be considered as personal property and pass to the

personal representative. In order to sustain this position, the appellant must establish the fact that the giving of the option devested the grantors of said option of their title to the lands. The word "seised" means owned or possessed. (*Lucet* v. *Beekman,* 2 Caines (N. Y.), 385; *Tewksbury Tp.* v. *Readington Tp.*, 8 N. J. L. (3 Halst.) 319; *Dodge* v. *Stevens,* 105 N. Y. 585, 12 N. E. 759; *Warner* v. *Sprigg,* 62 Md. 14.) In other words, section 3716 means that a wife shall have dower in all lands belonging to her husband, as distinguished from equitable interest or title that she may hold in lands at the time of his death. The contract executed on October 28, 1909, upon its face, as well as by its terms, purports to be nothing but an option giving Forbis and Ector the right to purchase these lands, should they so desire. They were under no obligation to purchase the lands. Respondent had no right to compel them to purchase said lands against their will. (See *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Sweezy* v. *Jones,* 65 Iowa, 272, 21 N. W. 603; *Myers* v. *Stone & Son,* 128 Iowa, 10, 111 Am. St. Rep. 180, 5 Ann. Cas. 912, 102 N. W. 507.) It follows from the foregoing that the only thing conveyed or granted by the instrument was an irrevocable offer on the part of C. J. Tyler and Jane Tyler to sell their land to Forbis and Ector, should they desire to buy it and at any time up to and including April 1, 1910, complying with the terms and conditions of said instrument. The conclusion, therefore, is irresistible that at the time of Tyler's death he was seised of title to the lands belonging to him and described in said option, and that upon his death the title to said lands vested at once in his heirs. (*Conn* v. *Tonner,* 86 Iowa, 577, 53 N. W. 320.)

Appellants rest on the proposition that the deed, on delivery by the bank, on April 1, 1910, relates back and becomes effective as of date October 28, 1909, thereby altering the status of the estate and converting that which was realty at the time of Tyler's death, into personalty, and destroying respondent's right of dower in the real estate. It is not denied that the courts have announced and applied this doctrine of relation, but have

always, when so applying it, recognized it as a fiction of law, equitable in its nature and limited in its application to cases where it is necessary to prevent injustice or effect the plain intention of the parties. (*Chadwick* v. *Tatem,* 9 Mont. 354, 23 Pac. 729.) In the instant case no necessity exists. Neither is there any injustice relating to any of the parties to the option and the general rule that a deed speaks from the actual date of delivery. On the contrary, very great injustice will result from the application of the doctrine of relation, for by this fiction the dower right of the widow will be destroyed. The widow's right of dower is a favorite of the law, but here it is urged that it shall be swept aside, not reluctantly, or from necessity, to prevent injustice, but gratuitously to take from the widow and add to the portion of the remoter kindred. (*Wheelright* v. *Wheelright,* 2 Mass. 247, 3 Am. Dec. 21.) This seems to be the earliest case in America which discusses the doctrine of relation, and the case cited in practically all subsequent decisions as laying down this doctrine. A careful reading of the case will show that what was said on the subject of relation was *dicta.* But granting what was there said on the subject of relation full force and effect, it will be perceived in the cases therein cited, as well as in the case itself, that the principle of necessity was present, if recourse had not been had to the doctrine of relation, there was no way in which the plain intention of the parties could have been effected.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiff to have allotted to her her dower in the estate of her deceased husband. The case was submitted to the court sitting without a jury, upon an agreed statement of facts which may be epitomized as follows: On October 28, 1909, Charles J. Tyler and the plaintiff, as husband and wife, entered into a contract with Hugh Forbis and E. L. P. Ector, under the terms of which the latter were, for the consideration of $500, given the exclusive right to purchase certain lands belonging to the former, situate in Granite county, for

the sum of $12,000. The lands were owned in part by the husband; title to the rest being vested in the plaintiff in her own right. The contract recites: "That the said parties of the first part, for and in consideration of the sum of $500, * * * by these presents do give, grant, and sell unto the said parties of the second part, their successors, * * * the exclusive right, privilege, and option to purchase the following described lands. * * * " It was stipulated that the obligors should execute and deposit in escrow in the First National Bank of Missoula a warranty deed, with directions that it be delivered to the obligees, provided they should pay to the bank the sum of $11,500 on or before April 1, 1910; another stipulation providing that the sum of $500 paid upon the execution of the contract should be credited upon the purchase price. Time was made of the essence of the contract, and it was agreed that, in case the obligees failed to pay the purchase price on or before the date named, the obligors would be entitled to withdraw the deed from the bank and retain the cash payment. It was further agreed: "That if the said parties of the second part shall elect to purchase said property, and pay the said sum of $11,500, and accept the said deed, then the said parties of the first part will immediately quit, deliver, and surrender the possession of said property." Tyler died intestate on January 8, 1910, leaving no children or descendants of children; the sole heirs being his widow, the plaintiff, and George M. Tyler, a brother, and Elta Simons, a niece, the defendants herein. In addition to the lands subject to the option contract, the decedent owned lands in Missoula county. The plaintiff was appointed and qualified as administratrix upon the estate. On April 1, 1910, Forbis and Ector deposited the purchase price in accordance with the terms of the contract and received the deed from the bank. A portion of the moneys so deposited the plaintiff used to pay the debts of the decedent and the expenses of administration. After allowing for these expenditures and deducting $2,500, the amount the plaintiff was entitled to as the price of the lands held in her own right which were included in the sale, there

remains a balance of $8,151.71. On September 23, 1912, the plaintiff made, in writing, her election to take, in lieu of dower, one-half of all the real estate of which her husband died seised, claiming that her right attached to the proceeds of the sale of the lands to Forbis and Ector, and thereupon brought this action to have her rights determined. The district court sustained her claim, and awarded her a decree accordingly. Defendants have appealed.

It is conceded that the decree was proper as far as it awarded her dower in the lands owned by her husband at the time of his death not included in the contract of sale. This concession is necessary, because a widow situated as is the plaintiff in this case is entitled, under section 3716 of the Revised Codes, to make her election to take one-half of the real estate remaining after the payment of all just debts and claims against her deceased husband, in lieu of dower awarded her under section 3708. Section 3716 provides: "If a husband die, leaving a widow, but no children, nor descendants of children, such widow may, if she elect, have, in lieu of her dower in the estate of which her husband died seised, whether the same shall have been assigned or not, absolutely and in her own right, as if she were sole, one-half of all the real estate which shall remain after the payment of all just debts and claims against the deceased husband: Provided, that, in case dower in such estate shall have been already assigned, she shall make such new election within two months after being notified of the payment of such claims and debts." This provision was considered by this court in *Dahlman* v. *Dahlman*, 28 Mont. 373, 72 Pac. 748. It was there held that the right granted is absolute, and is wholly independent of the right of the widow to participate in the distribution of the estate as heir of her husband. It attaches to all lands falling within the description in section 3708, unless it has been relinquished in legal form. One mode of relinquishment is by her joining with her husband in a conveyance other than a mortgage.

The question at issue therefore is: Did the delivery by the bank of the deed to Forbis and Ector operate to bar the plain-

tiff's right? The solution of this question will be reached when [1-3] it shall have been determined what was the legal effect of the delivery of the deed under the option contract, containing, as it did, the stipulation for the deposit of it with the bank. Aside from this stipulation, the only right granted by the option to Forbis and Ector was to buy the lands within a specified time. The transaction was neither a sale nor an agreement to sell. The contract did not grant a present interest in the lands, but amounted only to a standing offer to sell which Forbis and Ector could elect to accept, but were not bound to accept. The thing of value they acquired was the right to have the offer stand open until the expiration of the time fixed within which they could make their election. Tyler and wife were bound to hold the offer open for the time agreed upon, because they had been paid a consideration for so doing. Yet they could not compel Forbis and Ector to accept; nor could they recover damages for the failure to do so. The distinction between such a transaction and an agreement to sell was clearly pointed out in *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695. The one is the sale of an option—an executed contract—which does not become an agreement to sell until the election has been exercised. The other is an executory agreement which either party may require the other to perform according to its terms. As was further pointed out in that case, it may be that, by an agreement of the parties, the consideration paid for the option may become a credit upon the purchase price, if the purchaser of the option elects to purchase; but that this is so does not change the nature of the transaction. It still retains its distinctive character of an option contract, leaving the seller seised of the lands as fully as if the contract had not been made.

Nor do we think the situation of the title or the relations of the parties were altered by the fact that the obligors agreed to execute, and did execute and deposit the deed in escrow in the bank. "A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor." (Rev. Codes, sec. 4596.) "A grant may be deposited by the grantor

with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect. While in the possession of the third person, and subject to condition, it is called an escrow.'' (Sec. 4599.) If the grant cannot take effect until delivery, the title remains in the grantor. (*Fuller* v. *Hollis*, 57 Ala. 435; *Keyes* v. *Meyers*, 147 Cal. 702, 82 Pac. 304.) If he die before the performance of the condition, the title necessarily descends to his heirs, subject to such right as the holder of the option contract has under which the deposit was made. (*Chadwick* v. *Tatem*, 9 Mont. 354, 23 Pac. 729; *Flagg* v. *Teneick*, 29 N. J. L. 25; 16 Cyc. 578.) The title must vest somewhere; and, since the decedent did not devest himself of it by his contract, it vested in those who were entitled under the law to take by succession, *viz.*, the heirs. In case of a devise by a testator of property subject to such a contract, the devisee takes under the will subject to be devested of his title by the performance of the condition by the obligee. (*Chadwick* v. *Tatem, supra;* Rev. Codes, secs. 4749, 4751.) Though, under the law of succession, the heirs take by the will of the legislature, instead of by the expressed will of the decedent, the rule is the same. (Rev. Codes, secs. 7603, 7614–7626.) If the deposit of the deed had not been made, and the decedent had been living when the purchase price was paid, the decedent and plaintiff would have been required to execute and deliver a deed. They could have been compelled to do so. (*Ide* v. *Leiser, supra.*) So, after he died, Forbis and Ector would have been entitled to have the plaintiff specifically perform the contract. It follows, therefore, that the deposit of the deed did not in any respect change the relations of the parties or give Forbis and Ector any greater right than if it had not been made. The subject of the contract remained the property of Tyler. He was seised of an estate of inheritance in it when the contract was executed, and he was so seised at the date of his death. At most, the execution and deposit of the deed was but a convenient device adopted by the parties to avoid the necessity of coming together again when the purchase price had been paid, to accom-

plish its execution and delivery. Under the statute *supra* (sec. 4599) the deed took effect upon its delivery, and served exactly the same purpose as if it had been both executed and delivered when the purchase price was paid. In the meantime, the husband having died seised of the lands within the meaning of the statute (sec. 3708), the dower right of the widow attached, and was not devested by the delivery of the deed. That this is so will be made apparent by illustration: A decedent may be possessed of a single piece of land. It may become necessary, during the course of administration, to sell the whole of it to procure funds to pay the claims of creditors of the decedent and the expenses of administration, it being of such a character that it cannot be divided. No one would contend that, under these circumstances, the proceeds would not be subject to the widow's right of dower. Again, the plaintiff signed the option. Under sections 7614 to 7626, *supra,* though the deed had not been deposited, she could have been compelled to make the conveyance. If it be said that this would have barred her right, the claim must be justified, if at all, by the assumption that the option contract was a conveyance. This we have shown it was not. We think that the term "conveyance," as used in the statute (sec. 3708), means a conveyance effective to transfer the title at the time it was made, and may not be construed to include one which has not become effective until after the rights of the widow have attached.

Counsel for the defendants invoke the doctrine of relation, and insist that, in order to prevent the defeat of the manifest [4] intention of the parties, the delivery of the deed must be held to relate to the date of its execution or its delivery to the bank. The rule on this subject is established in this jurisdiction by the statute *supra* (sec. 4599). The rule contended for by defendants is a fiction of law, applied by courts of equity in exceptional cases to sustain a conveyance which would otherwise fail of its purpose, and thus defeat the intention of the parties. *Wheelright* v. *Wheelright,* 2 Mass. 446, 3 Am. Dec. 66, *Davis* v. *Clark,* 58 Kan. 100, 48 Pac. 563, *Smiley* v. *Smiley,*

114 Ind. 258, 16 N. E. 585, *Goodpaster* v. *Leathers,* 123 Ind. 121, 23 N. E. 1090, and *Bostwick* v. *McEvoy,* 62 Cal. 496, are illustrative cases. It has application to cases in which it is necessary to uphold a right. For example, it might be invoked to uphold the title in Forbis and Ector, but cannot be invoked to defeat the right of the plaintiff which attached before the second delivery. In *Chadwick* v. *Tatem, supra,* this court refused to apply it to a case which, in all essential particulars, is identical with this. It held that the provisions of the statute which were then in force and which have been brought forward into all the Codes since that time (Comp. Stats. 1887, Second Div., secs. 461, 463; Civ. Code 1895, secs. 1746, 1748; Rev. Codes, secs. 4749, 4751) were controlling, and that the rule had no application. As we have already pointed out, the fact that the property involved in that case had been disposed of by will, whereas in this case the decedent left no will, does not distinguish that case from this.

We are not now concerned about a solution of the question whether the bank could lawfully deliver the deed after the death of Tyler. It did so. The defendants tacitly agree that its action was lawful. This being so regarded, and the doctrine of relation held inapplicable, the plaintiff is clearly entitled to her dower in the proceeds of the sale, because her right attached before the deed became effective.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.